**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

LINDA SMITH

    Plaintiff,

v.

THE UNIVERSITY OF SCRANTON,
BRIAN CONNIFF and CLAYTON
NOTTELMANN

    Defendants.

CIVIL ACTION NO. 3:16-CV-02430

(JUDGE CAPUTO)

## MEMORANDUM

Presently before this Court is a motion for summary judgment filed by Defendants University of Scranton, Brian Conniff, and Clayton Nottelman. Plaintiff Linda Smith claims that Defendants terminated her employment approximately thirty-three (33) months after she requested an accommodation authorized by the Americans With Disabilities Act ("ADA"). This is true. However, Plaintiff has offered no evidence to suggest that her termination was a result of her request for an accommodation. Therefore, Plaintiff is unable to establish a *prima facie* case of retaliation under the ADA and judgment must be entered in favor of the Defendants.

## I. Background

### A. Factual History

Linda Smith was hired by Defendant University of Scranton to serve as a receptionist in the Residence Life Office in November 2007. (Defendants' Statement of Material Facts ("*DSMF*"), at ¶ 1.) While in this position, on October 10, 2012, Plaintiff formally requested a workplace accommodation. Specifically, Plaintiff requested that her assignments be communicated to her in writing or via email. (*DSMF*, Ex. E. at 1.) She made this request because she was suffering from a disability that caused her to have "trouble with [her] memory." (*DSMF*, Ex. E at 1-2.) This accommodation was granted. (Plaintiff's Statement

of Material Facts ("*PSMF*"), Ex. 37.)

Following her request for a workplace accommodation, Plaintiff filed an internal complaint against her supervisor, Barbara King. This complaint alleged that King harassed her and maintained a hostile work environment. (*DSMF*, at ¶ 6; *PSMF* ¶¶ 5, 6.) In an effort to "get away from King," Plaintiff began applying for other positions at the University. (*DSMF*, at ¶ 9; *PSMF*, at ¶ 9.)

Plaintiff applied and was offered a temporary position in the University's Theology Department on October 31, 2013. (*DSMF*, at ¶¶ 11, 13; Ex. L.) This position offered Plaintiff the same rate of pay and the same benefit package as her position in the Residence Life Office. (*DSMF*, at ¶ 14.) Notably, approximately seven months after transferring to the Theology Department, her temporary position was made permanent. (*DSMF*, at ¶ 21.) Plaintiff's supervisor, Dr. Frein, offered her this position in lieu of conducting a search for a new secretary. Effective July 1, 2014, Plaintiff accepted the permanent position in the Department. (*DSMF*, at ¶ 23.)

On July 31, 2014, Plaintiff received a performance review related to her work in the Department. (*PSMF*, Ex. 15.) This review indicated that Plaintiff was meeting her supervisors' expectations. (*Id.*) But Dr. Frein specifically identified a number of areas for the Plaintiff to improve. In fact, Plaintiff also reflected that she needed to become "more proficient with PDF files" and learn how to work the Department's printer. (*Id.*; *DSMF*, Ex. T.) Plaintiff further remarked that she needed to take two classes to "make [herself] more proficient," generally. (*PSMF*, Ex. 15.) Plaintiff's identification of areas to improve are consistent with complaints raised by some members of the Theology Department.[1]

Plaintiff's performance deteriorated. During the 2014-15 academic year, Dr. Frein

---

[1] *See, e.g., DSMF*, Ex. N (illustrating Plaintiff's lack of experience with PDFs); Ex. O (documenting Plaintiff's inability to properly manage a faculty member's budget request.).

2

was contacted by a number of faculty members expressing their disappointment with Plaintiff's performance.[2] At least some members of the faculty did not believe Plaintiff was improving in the areas Dr. Frein identified during Plaintiff's July 2014 performance review. As a result, at least one faculty member stopped using Plaintiff for important tasks such as the preparation of a tenure dossier. (*DSMF*, Ex. X at 2.) To be clear, the faculty believed Plaintiff was a pleasant member of the staff. (*See, e.g., PSMF*, Ex. 17 (explaining that the faculty did not want to cause Plaintiff hardship); Ex. 76 (recognition of Plaintiff winning the "Staff Senate Spirit Award").) But her demeanor did not make up for what some faculty members considered inadequate performance. *See supra* note 2.

Due to the number of faculty complaints, Dr. Frein decided to contact the Dean of the College of Arts and Sciences, Brian Conniff, to determine what could be done to obtain an able secretary. (*PSMF*, Ex. 17.) Notably, when Dr. Frein contacted Dean Conniff she did not seek Plaintiff's termination. (*Id.*) Rather, she hoped that Dean Conniff would be able to reassign Plaintiff to "another position in the University . . . that required less detail-oriented work." (*Id.*)

On July 30, 2015, Dean Conniff and Clayton Nottelmann, a member of the University's Human Resources staff, met with Plaintiff. (*DSMF*, at ¶ 43.) There, the Dean and Nottelmann informed Plaintiff that her employment was being terminated as a result of her performance.[3] As memorialized in Plaintiff's notice of termination, she was told that her

---

[2]     *See, e.g., DSMF*, Ex. Y (summarizing faculty complaints); Ex. X (explaining Plaintiff's failure to properly print a set of documents); Ex. W (discussing Plaintiff's failure to properly submit receipts for reimbursement).

[3]     The parties dispute what was said in this meeting. Plaintiff believes that Nottelmann explicitly referenced her past performance in the Residence Life Office, and Defendants disagree. (*DSMF*, at ¶¶ 41, 45; *PSMF*, at ¶¶ 41, 45.) Importantly, while Plaintiff implies that Nottelmann discussed her request for an accommodation, the record does not support such a

3

performance had been below standards. (*DSMF*, Ex. S.) Namely, they explained that Plaintiff routinely erred in printing and copying documents; failed to properly order and manage office supplies; failed to pay attention to detail; and failed to display the initiative required to perform the requirements of her position. (*Id.*)

**B.     Procedural History**

Based on the foregoing facts, Plaintiff filed a Complaint on December 7, 2016 alleging violations of the ADA and PHRA. (*Doc.* 1.) Specifically, in Count I, Plaintiff alleges that the University of Scranton, through its agents, retaliated against her because she engaged in activities protected by the ADA. (*Doc.* 1, at 5.) And, in Count II, Plaintiff alleges that Defendants Brian Conniff and Clayton Nottelmann violated the PHRA when they aided and abetted the University's retaliatory conduct. (*Doc.* 1, at 6.) The Defendants answered the Complaint on February 17, 2017, and the Defendants were permitted to amend their Answer on December 4, 2017. (*Docs.* 7, 26.) An amended Answer was filed on January 10, 2018. (*Doc.* 30.)

On February 19, 2018, the Defendants filed a Motion for Summary Judgment. (*Doc.* 33.) Principally, Defendants contend that Plaintiff was not retaliated against following her request for an accommodation under the ADA. Rather, they suggest that the undisputed evidence shows that Plaintiff was terminated because of her inability to adequately perform her required tasks.

The Motion has been fully briefed (*Docs.* 34, 38, 39) and is ripe for review.

---

finding. (*PSMF*, at ¶ 45.) Neither Nottelmann nor Plaintiff testified in their depositions that the accommodation was discussed at the termination meeting. Instead, the parties dispute whether the Plaintiff's *performance* during her time in the Residence Life Office was discussed.

4

## II. Legal Standard

**A.     Motion for Summary Judgment**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 247-48. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When considering whether there are genuine issues of material fact, the court is required to "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

In order to prevail on a motion for summary judgment, the non-moving party must show "specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing FED. R. CIV. P. 56(e)). Although the non-moving party's evidence may be either direct or circumstantial, and "need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III. Discussion

**A.     Count I: Retaliation Under the Americans with Disabilities Act**

Plaintiff asserts that she was fired from her position at the University of Scranton in retaliation for her request for accommodations under the ADA. To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show that: (1) she engaged in a protected employee activity; (2) she suffered an adverse action either after or contemporaneous with

6

the protected activity; and (3) that the protected activity and adverse action are causally connected. *See Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004). If a plaintiff establishes the *prima facie* case, the burden shifts to the employer to offer a "legitimate, non-retaliatory reason for its adverse employment action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (establishing the burden-shifting framework employed following the establishment of Plaintiff's prima facie case); *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000) (applying the *McDonnell Douglas* standard to ADA retaliation claims). "The employer's burden at this stage is 'relatively light: it is satisfied if the defendant articulates any legitimate reason for the adverse employment action.'" *Yanoski v. Silgan White Cap Ams., LLC*, 179 F. Supp. 3d 413, 425 (M.D. Pa. 2016) (Caputo, J.) (citing *Krouse*, 126 F.3d at 494). If the employer offers a legitimate non-retalitory reason for the adverse action, then the burden shifts back to the employee to show "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Jones v. Sch. Dist.*, 198 F.3d 403, 410 (3d Cir. 1999). While the burden of production shifts in accord with the *McDonnell Douglas* standard, the burden of persuasion remains, at all times, on the employee. *Shaner*, 204 F.3d at 500.

Here, Defendant has moved for summary judgment arguing that Plaintiff has failed to establish a *prima facie* case of retaliation and that Plaintiff has failed to show, by a preponderance of the evidence, that the reason offered for Plaintiff's termination amounts to a pretext for discrimination. Because Plaintiff has failed to establish a *prima facie* case of retaliation, judgment will be entered in favor of the Defendants and against the Plaintiff.

  (1) *Prima Facie Case of Retaliation*

Defendants first argue that Plaintiff has failed to establish a *prima facie* case of retaliation under the ADA. Remember, to establish a *prima facie* case of retaliation a

Plaintiff must show that: (1) she engaged in a protected employee activity; (2) she suffered an adverse action either after or contemporaneous with the protected activity; and (3) that the protected activity and adverse action are causally connected. *See Williams*, 380 F.3d at 759. Defendant concedes that Plaintiff engaged in protected activity and suffered an adverse employment action. (*Doc*. 34, at 13-14.) Thus, Defendant only questions whether Plaintiff can show a causal connection between the alleged protected activity and her termination. She cannot.

There is no question that the "temporal proximity between the protected activity and the termination [can be itself] sufficient to establish a causal link." *Shellenberger v. Summit Bancorp*, 318 F.3d 183, 189 (3d Cir. 2003). But "the timing of the alleged retaliatory action must be 'unusually suggestive of retaliatory motive' before a causal link will be inferred." *Id.* at 189 n.9 (citing *Krouse*, 126 F.3d at 503). To be "unusually suggestive," the adverse action must immediately follow the protected activity. For example, in *Jalil v. Avdel Corporation*, 873 F.2d 701 (3d Cir. 1989), the Third Circuit found that the plaintiff established a causal connection to support a *prima facie* case of retaliation because he was terminated just two days after he engaged in protected activity. *Jalil*, 873 F.2d at 708. In contrast, the Third Circuit has held that a nineteen month gap between protected activity and an adverse action "was too attenuated to create a genuine issue of fact." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (citing *Krouse*, 126 F.3d at 503). While I am instructed to engage in a fact-intensive inquiry, I must acknowledge that there is "clearly a difference between two days and nineteen months" when determining whether the temporal proximity between protected activity and an adverse action is unusually suggestive of retaliation. *Id.* at 279 n.5.

Here, the timing of the alleged retaliatory action is not unusually suggestive of retaliatory motive. Plaintiff formally requested an accommodation under the ADA on

8

October 10, 2012. She was terminated on July 30, 2015. Stated differently, Plaintiff was terminated approximately thirty-three (33) months after her formal request for accommodations under the ADA. Thus, the temporal proximity between Plaintiff's request for an accommodation and her termination cannot, alone, satisfy the causality requirement necessary to establish a *prima facie* case of retaliation.

In cases where there "is a lack of temporal proximity, circumstantial evidence of a pattern of antagonism following the protected conduct can also give rise" to the inference that a plaintiff's protected activity was the reason for the adverse action. *Kachmar v. Sungard*, 109 F.3d 173, 177 (3d Cir. 1997). However, finding either temporal proximity or a pattern of antagonism are "not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." *Id.* (citing *Waddell v. Small Tube Prods., Inc.*, 799 F.2d 69, 73 (3d Cir. 1986); *see also Farrell*, 206 F.3d at 280-81 (collecting cases where circumstantial evidence unrelated to temporal proximity and a pattern of antagonism supported the finding of a causal connection).

Plaintiff believes that she has put forth "sufficient evidence from which [a] jury could find [a] causal connection between her protected activities and her termination." (*Doc*. 38, at 8.) First, Plaintiff cites the conduct of Clayton Nottelmann, the University's former Director of Human Resources. But Plaintiff has offered no evidence that Nottelmann was ever hostile towards her. Instead, Plaintiff misquotes a report issued by the University in response to Plaintiff's complaint about her former supervisor, Barbara King. This report only mentions Nottelmann in passing and never concludes, as Plaintiff suggests, that he harbored animosity towards her.[4] *(*PSMF, Ex. 39.) To suggest Nottelmann's conduct amounted to a "pattern of antagonism" runs contrary to the undisputed evidence.

---

[4] In fact, emails between Plaintiff and Nottelmann suggest he engaged with her in an attempt to resolve her concerns about working for Barbara King.

Next, Plaintiff argues that Nottelmann made comments during her termination meeting on July 30, 2015 about her request for an ADA accommodation. She contends that this fact is sufficient to establish a causal connection for purposes of satisfying a *prima facie* case of retaliation. In support of her argument Plaintiff relies on a single case: *Fasold v. Justice*, 409 F.3d 178 (3d Cir. 2005). There, the Third Circuit concluded that when an employer specifically mentions an employee's protected activity during a termination meeting, the causation requirement of the *prima facie* case is satisfied. *Fasold,* 409 F.3d at 190. Unfortunately, here, there is no evidence to support Plaintiff's position that Nottelmann specifically referenced her accommodation. Instead, the evidence suggests that Nottelmann may have discussed her performance while working for Barbara King, but refrained from discussing her request for an accommodation under the ADA. In other words, the dispositive fact in *Fasold*–a specific reference to a protected activity–is not present.[5] Therefore, *Fasold* is distinguishable and Nottelmann's comments during the termination do not satisfy the causation requirement to establish a *prima facie* case of retaliation.

Finally, Plaintiff argues that there was a "corporate culture of subjecting her and another employee to retaliatory actions for engaging in protected activities." (*Doc.* 38, at 8.) Certainly, the University culture did not subject Plaintiff to a pattern of antagonism. In fact, the "corporate culture" seems to have enabled Plaintiff to transfer to a new job at the University with great ease and remain in that job for years even as her performance waned. Moreover, those that did critique her performance also commented that she always had a

---

[5] It is also important to note that the Circuit believed there was a "temporal proximity between Fasold's protected act and the challenged employment decision. *Fasold*, 409 F.3d at 189. But even if this timing was not conclusive, the specific references to the plaintiff's protected activity was "sufficient to support an inference by the trier of fact of a causal link between" the plaintiff's protected action and the adverse employment action. *Id.* at 190.

10

good attitude and they hoped she would be able to either improve her abilities or find another job at the University. Again, the undisputed record in no way suggests that Plaintiff's request for an ADA accommodation was in any way related to her termination.

Because Plaintiff has been unable to show that (1) the timing of her termination was unusually suggestive of retaliation, (2) that she suffered from a pattern of antagonism, or (3) that any set of circumstantial evidence suggests her termination was a result of her protected activity, she is unable to establish a *prima facie* case of retaliation under the ADA. For this reason, judgment will be entered in favor of the Defendants and against the Plaintiff with respect to Count I of the Complaint.

**B.     Count II: Aiding and Abetting Retaliation Under the Americans with Disabilities Act**

Entering judgment in favor of the Defendants with respect to Count I requires I also enter judgment in favor of Defendants and against the Plaintiff on Count II. Count II asserts that the individual Defendants, Brian Conniff and Clayton Nottelmann, aided and abetted violations of the PHRA. (*Compl.* at 33). Where an employer is not liable for retaliatory conduct under the ADA, he is similarly not liable for retaliatory conduct under the PHRA. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (explaining that a district court does not err when it treats "PHRA claims as coextensive with . . . ADA . . . claims."); *see also Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (noting that the "analysis of an ADA claim applies equally to a PHRA claim.") And, an individual can not be held liable for aiding and abetting a non-existent retaliation. *See Carroll v. Comprehensive Women's Health Servs.*, No. 16-1509, 2017 WL 4284386, at *6 n.4 (M.D. Pa. Sep. 27, 2017). Because I have found that the Defendants did not retaliate against Plaintiff for seeking an accommodation under the ADA, I must also find that Conniff and Nottelmann did not aide or abet such retaliation. Therefore, I will enter judgment in favor of the

11

Defendants and against Plaintiff on Count II.

## IV. Conclusion

For the above stated reasons, Defendants' Motion for Summary Judgment will be granted and judgment will be entered in favor of the Defendants and against the Plaintiff.

An appropriate order follows.

| | |
|---|---|
| July 10, 2018 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |